IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

EDWIN MARRERO,

    Petitioner,

v.                                            Civil Action No. 1:11cv106
                                                (Judge Keeley)

TERRY O'BRIEN, Warden,

    Respondent.

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On July 8, 2011, the *pro se* petitioner filed an Application for Habeas Corpus pursuant to 28 U.S.C. § 2241, as well as a Motion for An Emergency Abeyance Order. In addition, the petitioner filed a Motion to clarify his petition pursuant to Rule 15(c)(6) of the Federal Rules of Civil Procedure. On July 19, 2011, the petitioner was granted leave to proceed *in forma pauperis*. On July 27, the undersigned entered an Order granting the petitioner's motion to clarify and directed the Clerk of Court to send the petitioner a blank form Application for Habeas Corpus Pursuant to § 2241 to use in clarifying his claims. The petitioner was given twenty-one (21) days from entry of the order within which to clarify his petition. On August 12, 2011, the petitioner filed a Motion seeking an extension of time within which to clarify his petition. As grounds for the motion, the petitioner alleged that USP Hazelton was on frequent lock downs which limited his time in the library. The petitioner also alleged that he did not receive the blank form that the Clerk was to have sent.

1

Accordingly, on August 16, 2011, the undersigned granted the Motion and afforded the petitioner an additional thirty (30) days to clarify his petition. The Order also directed the Clerk to send another blank form. The Order and form were sent by certified mail, return receipted requested. Service was accepted at USP Hazelton on August 18, 2011. To date, the petitioner has not filed anything further. Accordingly, this case is pending before the undersigned on initial review.

## II. **PETITION**

The petitioner indicates that his petition concerns prison disciplinary proceedings and "illegally obtaining of (DNA) sample by force and threats without obtaining a Court-order first." (Doc. 1, p.1). In the declaration attached, the petitioner alleges that on June 15, 2011, he was asked by a nurse to supple DNA and fingerprint samples. He inquired why he was being asked to supply DNA without a court order and was told that the BOP Director Harley G. Lappin is requesting it from all prisoners. The petitioner further alleges that if a prisoner does not willingly submit a DNA sample, it is taken by force. The petitioner maintains that when he refused to supply a DNA sample without a court-order, the nurse wrote an incident report for two BOP violations. It appears that on June 20, 2011, a second request was made for the petitioner to supply a DNA sample and fingerprints, and after being counseled as to the consequences of non-compliance, he again refused. Accordingly a second incident report was prepared. At the time the petition was filed, both incident reports had been referred to the Unit Disciplinary Committee ("UDC"), but there is no indication what, if any, action they took, nor is there any indication that the plaintiff had been before a Disciplinary Hearing Officer ("DHO"). The petitioner maintains that he has been advised that even if his underlying conviction is overturned by virtue of his § 2241 petition pending in the Ninth Circuit, his DNA could still be used for any past and future criminal indictments. In summary, the

2

petitioner alleges that the BOP intends to collect the DNA sample by force which will violate his 4th, 5th, and 8th Amendment rights. For relief, the petitioner requests that the Court issue an abeyance order directing the BOP to stop any and all proceedings/threat of violence and/or actual physical violence until this Court decides his petition. In addition, the petitioner requests that the disciplinary proceedings be held in abeyance until his petition is decided and that all incident reports/sanctions regarding the incorrect proceedings concerning his refusal to freely give DNA samples be dismissed.

### III. BACKGROUND INFORMATION

In 1994, Congress authorized the Federal Bureau of Investigation to create a national index of DNA samples taken from convicted offenders, crime scenes, and unidentified human remains which could be used by criminal justice agencies for law enforcement identification, in judicial proceedings, and for criminal defense purposes. See H.R. REP. No. 106-900, at 8 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2324; Violent Crime Control and Law Enforcement Act of 1994 § 210304, 42 U.S.C. § 14132(a), (b)(3). As a result, the FBI established the Combined DNA Index System (CODIS), which allows state and local forensics laboratories to exchange and compare electronic DNA profiles in order to match crime scene evidence to convicted offenders on file in the system. See H.R. REP. No. 106-900, at 8 (20000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2324. By 2000, all fifty states had enacted statutes requiring convicted offenders to provide DNA samples for analysis and entry in CODIS. Id. However, samples taken from federal offenders were not included in CODIS "because the language of the 1994 act only authorized the creation of the CODIS system, and not the taking of samples from persons convicted of Federal crimes." Id. In 2000, in response to the perceived need to include federal offender samples in CODIS, Congress passed the DNA

3

Analysis Backlog Elimination Act, which granted authority for collection of these samples and also provided for federal grants to the states to assist in reducing the backlog of biological samples waiting to be analyzed in the state systems. Id. at 9, *reprinted in* 2000 U.S.C.C.A.N. 2323, 2324-25. As originally enacted, the Act provided that "[t]he Director of the Bureau of Prisons shall collect a DNA sample from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying general offense....or a qualifying military offense...." See 42 U.S.C. § 14135(a)(1). Qualifying offenses included "murder; voluntary manslaughter; other homicide offense, offense relating to sexual abuse, sexual exploitation or other abuse of children, and transportation for illegal sexual activity; kidnaping; burglary; and any attempt or conspiracy to commit those crimes." See H.R. REP. No. 106-900 at 19 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2334. In 2006, the law was amended to authorize the collection of DNA from any person in the custody of the BOP that has been convicted of a felony. See 42 U.S.C. §§ 14135(a)(1)(B), (d)(1). In addition, it is relevant to note that the federal statute strictly limits use of the DNA data base to law enforcement and criminal defense purposes and requires removal of an inmate's DNA sample from the data base upon proof that the conviction warranting the extraction of the sample has been overturned. See 42 U.S.C. §§ 144132(d), 141355e(a).

## IV. ANALYSIS

With respect to his allegations regarding the forcible collection of a DNA sample, the petitioner is not entitled to any relief under § 2241 because he is not challenging the legality of his custody and does not seek the immediate or speedier release from imprisonment. Rather, he is challenging the conditions of confinement or a violation of his civil rights, and these are not claims which can be brought in a habeas corpus petition. See Preiser v. Rodriguez, 411 U.S. 475, 499-500

4

(federal habeas relief extends to prisoners challenging the fact or duration of imprisonment and § 1983 actions apply to inmates making constitutional challenges to conditions of confinement). See also Lee v. Winston, 717 F.2d 888 (4th Cir. 1983). To pursue his claims regarding the DNA samples, the petitioner must file a lawsuit governed by Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 399 (1971),[1] and pay the $350.00 filing fee.

In addition, to the extent that the petitioner is challenging a disciplinary proceeding, his claim must also be dismissed. A federal prisoner challenging a disciplinary proceeding under § 2241 must exhaust his administrative remedies prior to filing suit. See McCling v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004). Moreover, the "[f]ailure to exhaust may only be excused upon a showing of cause and prejudice." Id.

With regard to disciplinary actions, the exhaustion of administrative remedies is initiated by first filing an appeal of the disciplinary action with the Regional Office within 20 days of receiving **written notification** of the disciplinary action. See 28 C.F.R. § 542.14(d)(2) (emphasis added). If unsatisfied with that response, the petitioner may file an appeal with the Central Office within 30 days of the date the Regional Director signed the response. Id. Where an appeal is rejected at the Regional Level, and the inmate is not given the opportunity to corrects the defect and resubmit, the inmate may appeal that rejection to the Central Office. See 28 C.F.R. § 542.1(c). The Central Office may affirm the rejection, may direct the submission be accepted at the lower level, or may accept the submission as filed. Id. "Appeal to the General Counsel is the final administrative appeal." See 28

---

[1] In Bivens, the Supreme Court created a counterpart to § 1983 so that individuals may bring suit against a federal actor for violating a right guaranteed by the Constitution or federal law. Because petitioner is a federal prisoner, he must therefore file a Bivens action as opposed to one under § 1983.

C.F.R. § 542.15(a).

The two incident reports in question, are dated June 15, 2011 and June 30, 2011. The petitioner filed this action on July 8, 2011, less than three weeks after the first disciplinary report was filed. Therefore, even if the disciplinary proceedings were finalized at a hearing before a DHO, it is abundantly clear that the petitioner could not have exhausted his administrative remedies as outlined above. Accordingly, to the extent that the petitioner has the right to file a § 2241 petition regarding disciplinary proceedings[2], his current petition is due to be dismissed for failure to exhaust administrative remedies.

## V. **RECOMMENDATION**

In consideration of the foregoing, it is the undersigned's recommendation that the petitioner's § 2241 petition (Doc. 1) be **DISMISSED** without prejudice to his right to file a Bivens action regarding

---

[2]Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, a prison disciplinary hearing results in the loss of good time credit, Wolff holds that due process requires the following:
1. giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;
2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;
3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and
5. providing impartial fact finders.

Accordingly, only if the petitioner lost or loses good time credits, will he be entitled to file a § 2241 petition challenging the disciplinary proceedings.

the collection of his DNA and/or a timely § 2241 petition challenging the disciplinary proceedings if he has lost or loses good conduct time and first exhaust his administrative remedies. It is further recommended that the petitioner's Motion for an Emergency Abeyance (Doc. 6) be **DENIED AS MOOT**.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last know address as reflected on the docket sheet.

Dated: December 6, 2011

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE